APPROXIMATELY 17,946 CONTAINERS OF ALCOHOLIC BEVERAGES (Sherrill W. Raley, D/B/A Raley Distributing Company, Intervenor, Appellant),

v.

The STATE of Texas, Appellee.

No. 6799.

Court of Civil Appeals of Texas. Amarillo.

Sept. 22, 1958.

Rehearing Denied Oct. 6, 1958.

Simpson, Clayton & Fullingim, Amarillo, for appellant.

Will Wilson, Atty. Gen., W. V. Geppert and Marvin R. Thomas, Jr., Asst. Attys. Gen., Wayne Bagley, Dist. Atty., Amarillo, for appellee.

NORTHCUTT, Justice.

The State of Texas by and through the Texas Liquor Control Board and its administrator as plaintiffs, represented by the Attorney General of Texas and by the District Attorney of Potter County, Texas, brought this action complaining of approximately 17,946 containers of alcoholic beverages alleging that the District Supervisor for the Texas Liquor Control Board had seized approximately 17,946 containers of alcoholic beverages, and designating such beverages, and that such beverages had been, just prior to such seizure, illegally possessed in the State of Texas and further alleging such alcoholic beverages complained of had been stored by the Texas Liquor Board in the State of Texas in premises provided for such purposes. It is the contention of the State of Texas that Sherrill W. Raley did transport such beverages in violation of Section 23¼, Sub-Section (e) and (f) and (g) of Article 2 of the Liquor Control Act, same being Article 667–23¼ of Vernon's Texas Penal Code, and that the same was illicit beverages as the term is defined by the Texas Liquor Control Act and sought judgment forfeiting to the State of Texas the said alcoholic beverages and ordering the same disposed of as provided by the Texas Liquor Control Act, and for general relief.

Sherrill W. Raley d/b/a Raley Distributing Company intervened, contending he

was the owner of the approximately 17,946 containers of alcoholic beverages and that the same was not illicit beverage because he had not transported such alcoholic beverages in violation of Article 667–23¼ of the Vernon's Texas Penal Code. It is the contention of the intervenor that it was not unlawful for him to import such alcoholic beverages for himself and his use as a general distributor in the State of Texas while holding such Distributor's License because the expressed and evident intent of the Legislator in enacting the pertinent provisions of the Texas Liquor Control Act intended that the holder of a General Distributor's License could import into the State of Texas his own beer for his own purposes as a General Distributor without the necessity of complying with the above mentioned sections. It is further the contention of the intervenor that the beverages in question were not improperly imported into this state by him because he held a General Distributor's License, and because of the terms of Article 667–3a and 667–29 it was not necessary for him to have Importer's License, and further, that the Court erred in declaring forfeiture for alleged violations of Article 667–23¼ of the Penal Code because such Article is in irreconcilable conflict with Article 667–3a and Article 667–29 of the Penal Code and therefore void and unconstitutional because contrary to Section 10, Article 1, Texas Constitution, Vernon's Ann.St., and Articles 1, 6 and 8 of the Texas Penal Code.

The case was submitted to the court without a jury upon stipulation of facts in effect as follows:

"On October 14, 1957, Sherrill W. Raley was operating under and by virtue of General Distributor's License No. BB16220, issued to Raley Distributing Company on June 25, 1957, by the Texas Liquor Control Board for the premises located at 100 North Buchanan Street, Amarillo, Potter County, Texas. On this date Mr. Raley dispatched a truck to the Griesedieck Bros. Brewing Company in St. Louis, Missouri, to pick up 1,077 cases of alcoholic beverages, to-wit beer, such quantities of alcoholic beverages being much in excess of 288 fluid ounces. On the occasion in question appellant did not have either an Importer's License or an Importer's Carrier's License as provided for under the provisions of the Texas Liquor Control Act.

"The truck so dispatched was leased under written contract by appellant from Charles Gibbs, and the driver of said truck, J. W. Newton, was on this occasion in the employment of Sherrill W. Raley, dba Raley Distributing Company.

"Appellant paid Griesedieck Bros. Brewing Co. for said beer by cashier's check prior to the delivery of the beer to the driver of the truck. The brewing company billed such beer to the High Plains Distributor, Amarillo, Texas, the latter on the date in question being the holder of a General Distributor's License and an Importer's License duly issued by the Texas Liquor Control Board. Upon the arrival of said beer in Amarillo High Plains Distributor billed the beer to Mr. Raley.

"On October 16, 1957, the beer arrived via the aforementioned truck in Amarillo and was carried to High Plains Distributor, which establishment was closed, whereupon Mr. Newton telephoned appellant, and in accordance with directions then given him by appellant delivered and unloaded the beer here involved at Raley Distributing Company, 100 North Buchanan Street, Amarillo, Texas.

On November 21, 1957, an inspector of the Texas Liquor Control Board placed under technical seizure the beer here in question, and on December 4, 1957, said inspector physically seized said beer."

The court held the described alcoholic beverages were illicit beverages as that term is defined by the Texas Liquor Control Act and as such was subject to forfeiture in that said beer was imported into the State of Texas in violation of Section 23¼ paragraph (e), (f) and (g) of Article 667 Vernon's Penal Code and ordered said bev-

erages forfeited as provided by the Texas Liquor Control Act. From this judgment Sherrill W. Raley perfected this appeal.

■ Although appellant assigns twenty-five points of error the appeal is presented upon three main issues. The State of Texas sought to forfeit the beer in question because appellant imported the beer into Texas without owning an Importer's License. The appellant contended that he could import this beer without such license because he was the holder of a General Distributor's License. The State of Texas pleaded that Sherrill W. Raley did transport the beer in question in violation of Sub-Sections (e), (f) and (g) of Article 667–23¼ Vernon's Texas Penal Code, and that said alcoholic beverages were transported in violation of the laws of the State of Texas in such manner and under such circumstances that the same was illicit beverages as that term is defined by the Texas Liquor Control Act, and that the same was subject to seizure and forfeiture by the State of Texas under the provisions of the Texas Liquor Control Act.

Under the agreed statement of facts, if the interpretation placed upon these articles as contended by the State of Texas is correct, there is no question but what the appellant has violated the law and the judgment of the trial court is correct, since it is admitted he transported the beer in excessive amounts into the State of Texas. Sub-Sections (e), (f) and (g) are as follows:

"(e). It shall be unlawful for any Importer, unless he be the holder of an Importer's Carrier's License, to import beer into this State except by steam, electric and motor power railway carriers, and common carrier motor carriers operating under certificates of convenience and necessity issued by the Railroad Commission of Texas, or such certificates issued by the Interstate Commerce Commission. Any such carrier shall be the holder of a Carrier's Permit provided for in Sec-

tion 15(12), Article I of the Act, and shall comply with all the requirements thereof as in the transportation of liquor. It shall be unlawful for any carrier enumerated herein to transport beer into this State unless the same shall be consigned to an Importer.

"(f). As used in Article II, an 'Importer' is a person who imports beer into this State in quantities in excess of two hundred and eighty-eight (288) fluid ounces in any one (1) day. It shall be unlawful for any Importer to import beer into this State unless and until he shall first obtain from the Board an Importer's License, the fee for which shall be Five Dollars ($5) per year or fraction thereof. The application for such license shall contain such information as the Board may require. No Importer's License shall be granted any person who is not already the holder of a Manufacturer's License or a Distributor's License, and all Importer's Licenses shall terminate at the same time as the primary license under which it was issued.

"(g). No Importer shall import beer into this State by any means of transportation other than those set out in paragraph (e) hereof unless he shall first obtain from the Board an Importer's Carrier's License, which license shall entitle him to import beer into this State in vehicles owned or leased in good faith by him. The fee for such license shall be Five Dollars ($5) per year or fraction thereof. The application for such license shall contain such information as to description of the vehicles and such other information as the Board may require. All vehicles used under such licenses shall have painted or printed thereon such designation as the Board may require. It shall be unlawful for any Importer to import beer into this State in any vehicle not fully described in his application, except as is permitted in paragraph (e) hereof. No Importer's

Carrier's License shall be issued to any person who is not already the holder of an Importer's License, and all Importer's Carrier's Licenses shall terminate at the same time as the primary license under which it was issued."

On the other hand, if appellant is correct in his interpretation of Article 667–3a and Article 667–29, then he was not guilty of violating the provisions of Sub-Section (e) (f) and (g) of Article 667–23¼. Article 667–3a is as follows: "It shall be unlawful for any person to import into this State any beer unless he holds a Distributor's or Manufacturer's License." All this Article says is that no person shall import beer into this state unless he holds a Distributor's or Manufacturer's License. Nothing is said concerning therein the amount to be imported and it does not say anything about any other requirements that an importer must have before he can import such beverages into this State. In other words, appellant could not receive Importer's License unless he owned a Distributor's or Manufacturer's License and under Sub-Section (e) above mentioned it is unlawful for any importer unless he be the holder of an Importer's License, to import beer into this State except by steam, electric and motor power railway carriers, and common carrier motor carrier's operating under certificates of convenience and necessity issued by the Railroad Commission of Texas or such certificates issued by the Interstate Commerce Commission. Then by Sub-Section 12 of Article 666–15 Vernon's Texas Penal Code states what is meant by the term carrier. Article 667–29 is as follows:

"It shall be unlawful for a common carrier or any person to transport beer into this State, except military beer consigned to military installations. unless the same shall be consigned and delivered to the holder of a Manufacturer's, General Distributor's, Branch Distributor's, or Local Distributor's License, except as provided in Section 3–b of Article II."

The exception as provided in Section 3b of Article 667 is to permit any person to import tax paid beer into this state for his own personal use not to exceed 288 ounces in any one day. Even a common carrier can not transport beer into the State of Texas unless consigned as provided for in Article 667–29. Article 666–3a(4) Texas Penal Code defines "Illicit beverages" as any "alcoholic beverage * * * imported, or transported" in violation of the Texas Control Act and then Article 666–42 provides as to the seizure and sale of the same. We are of the opinion and so hold that appellant unlawfully imported the alcoholic beverages in question into this State without having proper license to import the same although he did have Distributor's License and that the same was illicit beverage and that the State of Texas was entitled to seize the same and sell the same according to law. Appellant's points of error one to fourteen, both inclusive, are all overruled.

■ By appellant's points of error fifteen to twenty-five inclusive he urges the harshness of the remedy of forfeiture in this case because of the vagueness and uncertainty existing in the Texas Liquor Control Act by virtue of the provisions of Articles 667–3a, 667–23¼ and 667–29, and attempting to show the effect that an interpretation of these Articles would have upon acts innocently committed. We are unable to see from this record where there were any innocent acts committed. Appellant owned the beer at all times and imported the same but had the same billed to another party that owned an Importer's License. But be that as it may, the mere fact that a person does not agree as to what the law is will not excuse him from the terms of the law. Section (e) of Art. 667–23¼ provides: "It shall be unlawful for any Importer, unless he be the holder of an Importer's Carrier's License, to import beer into this State except * * *" Then that exception is as covered by Articles 667–29, and Art. 667–3a which merely states it is unlawful for any person to im-

port into this State any beer unless he holds a Distributor's or Manufacturer's License. This act does not state that a person may import beer if he has a Distributor's License but states he cannot unless he holds such license, and then Section (e) of Art. 667–23¼ merely says if you have a Distributor's License you may import beer if you comply with the law in this respect. We do not think that Section 10 of Art. 1 Texas Constitution nor Articles 1, 6 and 8 of the Texas Penal Code have been violated in this case, and overrule appellant's points of error fifteen to twenty-five, both inclusive.

Judgment of the trial court is affirmed.